```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------X
                                    07 Civ. 10534 (WCC)
SOFIA SAENZ,                    :
                                       ECF CASE
              Plaintiff,        :

        - against -             :      OPINION
                                       AND ORDER
EDWARD LUCAS, individually, VINCENT :
MUSSOLINO, individually, RICHARD LIGHT,
individually, MARK DiGIACOMO,   :
individually, POLICE OFFICER JANE DOE,
individually, and the TOWN/VILLAGE OF :
HARRISON, New York,
                                :
              Defendants.
                                :
-------------------X
```

**A P P E A R A N C E S :**

                                    LOVETT & GOULD, LLP
                                    **Attorneys for Plaintiffs**
                                    222 Bloomingdale Road
                                    White Plains, New York 10605

JONATHAN LOVETT, ESQ.

    Of Counsel


                                    FRIEDMAN, HARFENIST, LANGER
                                      & KRAUT, LLP
                                    **Attorneys for Defendants**
                                    2975 Westchester Avenue, Suite 415
                                    Purchase, New York 10577

NEIL TORCZYNER, ESQ.

    Of Counsel

**Copies E-Mailed to Counsel of Record**

**Conner, Sr. D.J.:**

Plaintiff, Sofia Saenz, brings this action under 42 U.S.C. § 1983 against defendants Edward Lucas ("Lucas"), Vincent Mussolino ("Mussolino"), Richard Light ("Light"), Mark DiGiacomo ("DiGiacomo"), Police Officer Jane Doe ("Doe") and the Town/Village of Harrison, New York (the "Town"), alleging that defendants violated her rights under the Fourth Amendment of the United States Constitution. Defendants Lucas, DiGiacomo and the Town moved to dismiss the claim against them pursuant to FED. R. CIV. P. 12(b)(6). For the following reasons, defendants' motion is denied.

## BACKGROUND

Plaintiff alleges the following in her Amended Complaint.

On August 20, 2007 plaintiff witnessed an incident between her then boyfriend, Joshua D. Clark ("Clark"), and her former boyfriend, Ralph Tancredi ("Tancredi"), during which Clark threatened to strike Tancredi with a baseball bat. (Am. Complt. ¶ 8.) Two responding police officers observed Clark with the bat and by radio informed Police Captain Anthony Marraccini ("Marraccini") that Clark was threatening Tancredi. (*Id.* ¶ 9.) Marraccini made it clear that he intended to charge Tancredi and not Clark. (*Id.*) Plaintiff alleges that Marraccini has a personal animus toward Tancredi because Tancredi filed federal civil rights actions against him and the Town Police Department, Tancredi expressed concern that he and the Chief of Police engaged in felonies with respect to members of the Department and Tancredi expressed concern that he forged a check intended for the Police Benevolent Association (the "PBA"). (*Id.*)

Plaintiff was transported to Police Headquarters from the scene and officers Mussolino and

1

Doe detained her in a room for approximately three hours in an attempt to coerce her to bear witness against Tancredi. (*Id.* ¶ 10.) Plaintiff alleges defendants did this to retaliate against Tancredi for having filed the civil rights actions and that the retaliatory conduct was known to and condoned by members of the Town Board of Police Commissioners (the "Town Board"). (*Id.*) Plaintiff did not consent to this detention and made it clear to the officers that she had no interest in assisting in the retaliatory plan. (*Id.* ¶ 11.)

Several days later Mussolino came to plaintiff's residence and attempted to coerce her to sign paperwork for issuance of a temporary order of protection in her favor against Tancredi. (*Id.* ¶ 12.) Plaintiff refused and Mussolino directed her to call Assistant District Attorney Barbara Eggenhauser ("Eggenhauser"). (*Id.*) Eggenhauser directed plaintiff to report to the District Attorney's Office where Eggenhauser advised her that, if she did not agree to an order of protection, Clark would "get in trouble." (*Id.* ¶¶ 13-14.) Plaintiff continued to refuse to agree to the order of protection. (*Id.* ¶ 15.)

Eggenhauser summoned plaintiff to her office again and, acting in concert with Officer Lucas and Detective Light, instructed plaintiff that she had been "abused" by Tancredi and questioned her about alleged cocaine use by Tancredi. (*Id.* ¶ 16.) Light falsely advised plaintiff that Tancredi referred to her as a "coke whore," and Lucas advised her that Tancredi had stolen money from the PBA. (*Id.* ¶¶ 17-18.) Eggenhauser, Light and Lucas then threatened to seek to have plaintiff deported if she did not cooperate with them against Tancredi (plaintiff is of Peruvian national origin.) (*Id.* ¶¶ 3, 19.)

Plaintiff was brought to Tancredi's court appearance and subsequently Light, on the pretext that he would driver her to her residence, drove her to Police Headquarters and placed her in a room

and interrogated her about Tancredi. (*Id*. ¶ 20.) Plaintiff protested her confinement, stating that she wanted to leave and did not "want to be part of this." (*Id*.) Officers Lucas and DiGiacomo joined Light in the room with plaintiff and further interrogated her, suggesting that Tancredi was involved in illegal gambling operations. (*Id*. ¶ 21.) Plaintiff again protested that she wanted to go home, and in response Lucas told her "go with the order of protection – you're in with us." (*Id*.)

Plaintiff filed this action on February 12, 2008 claiming defendants violated her rights under the Fourth Amendment because she did not consent to her confinements at Police Headquarters and in Eggenhauser's office, she was aware of the confinements, there was no probable cause or arguable probable cause to detain her and the detentions were not otherwise privileged or authorized. Defendants Lucas and DiGiacomo move to dismiss the claim against them because there is no indication in the Complaint that they arrested or confined plaintiff. The Town moved to dismiss on the ground that plaintiff failed to allege a municipal policy, practice or procedure that gave rise to a constitutional violation.

## DISCUSSION

**I.** **Legal Standard**

A motion brought under FED. R. CIV. P. 12(b)(6) posits that the plaintiff has failed "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). On a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all of the well-pleaded facts and consider those facts in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005); *In re AES Corp. Sec. Litig.*, 825 F. Supp. 578, 583 (S.D.N.Y. 1993)

(Conner, J.). In assessing the legal sufficiency of a claim, the court may consider only the facts alleged in the complaint, and any document attached as an exhibit to the complaint or incorporated in it by reference. *See* FED. R. CIV. P. 10(c); *Dangler v. N.Y. City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999); *De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 69 (2d Cir. 1996).

On a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the issue is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks and citation omitted). The fact pleading standard is "a flexible 'plausibility standard' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d. Cir. 2007) (emphasis in original); *see Ello v. Singh*, 531 F. Supp. 2d 552, 562 (S.D.N.Y. 2007). Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which plaintiff complains are insufficient as a matter of law. *See Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978).

## II. Fourth Amendment Claim

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV; *see also Arizona v. Evans*, 514 U.S. 1, 10 (1995). The Fourth Amendment prohibits "police seizures of persons for custodial interrogation—even brief detentions falling short of arrest—without probable cause." *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001). To determine whether an encounter constitutes a seizure, "a court must consider the totality of the circumstances and ascertain whether

4

the police conduct would have communicated to a reasonable person that he was free to terminate the encounter." *See United States v. Miller*, 382 F. Supp. 2d 350, 366 (N.D.N.Y. 2005) (citing *Florida v. Bostick*, 501 U.S. 429, 439 (1991)); *Bennett v. Town of Riverhead*, 940 F. Supp. 481, 488 (E.D.N.Y. 1996) (threat by officer to arrest parent if parent did not turn child over to officer could constitute "seizure" for purposes of Fourth Amendment because "[plaintiff's] only options were to hand over her child or to be arrested"); *see also I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984); *Svitlik v. O'Leary*, 419 F. Supp. 2d 189, 191 (D. Conn. 2006) (question of fact as to whether seizure occurred where "detectives forced [plaintiff] to go to the police department by expressly threatening to arrest him and tow his car if he refused").

The courts have set forth a non-exclusive list of factors suggesting that a seizure has occurred, including: "the threatening presence of police officers; the display of a weapon; physical contact by the officer; language indicating that compliance with the officer is compulsory; prolonged retention of a person's belongings; and a request by an officer to accompany him or her to the police station or a police room." *United States v. Rogers*, 2000 WL 101235, at *10 (S.D.N.Y. Jan. 27, 2000) (citing *Gardiner v. Incorporated Vill. of Endicott*, 50 F.3d 151, 155 (2d Cir. 1995)); *see Harris v. Wydra*, 531 F. Supp. 2d 233, 242 (D.Conn. 2007) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). The court must base its conclusion on the totality of the circumstances surrounding the encounter. *Rogers*, 2000 WL 101235, at *10 (citing *United States v. Glover*, 957 F.2d 1004, 1008 (2d Cir.1992)); *see United States v. Torres*, 949 F.2d 606, 609 (2d Cir. 1991).

In *Rogers*, the court determined that, without more, the detectives' request that the plaintiff accompany them back to the station house, the setting of the police station and the interrogation room were not so coercive as to preclude a reasonable person from feeling free to leave. 2000 WL 101235,

at *10-11. The plaintiff argued that a reasonable person would not have felt free to leave in the middle of an interrogation that lasted for over two hours, during which the detectives repeatedly told him that they believed he was a participant in a homicide. *Id*. at *14. The court stated that: "It has long been the rule, in this circuit and elsewhere, that questioning of a suspect that is prolonged and accusatory in nature suggests the occurrence of a seizure." *Id*. (citing *inter alia United States v. Mire*, 51 F.3d 349, 353 (2d Cir. 1995)). The court determined that the repeated, accusatory statements from two interrogating officers over the course of more than two hours, when viewed in light of all the circumstances, would lead a reasonable person to believe that he would not be permitted to leave the police station. *Id.*

An unreasonable seizure determination is based on the circumstances, and detention in a police station interrogation room may not necessarily lead a reasonable person to believe that he or she was not free to leave. But if the person is detained for a length of time, interrogated in a threatening way or otherwise subjected to circumstances in which a reasonable person would feel that he or she was no longer free to leave, the detention could become an unreasonable seizure. *See Delgado*, 466 U.S. at 216. At what point that happens, or what events would give rise to that claim, is based on an assessment of the particular circumstances. *See Gilles v. Repicky*, 511 F.3d 239 (2d Cir. 2007). We do not decide on this motion if plaintiff was subjected to an unreasonable seizure; we merely decide whether plaintiff has sufficiently alleged that, defendants participated in events that in the circumstances constituted an unreasonable seizure.

Defendants argue that there is no indication in the Amended Complaint that DiGiacomo and Lucas arrested or confined plaintiff; they argue that the Amended Complaint states that they entered the room after any alleged arrest occurred. (Defs. Mem. Supp. Mot. Dismiss at 8.) Defendants cite

6

case law to support this argument. (*Id.* at 8-9 (citing *Merritt v. City of New York*, 2001 WL 1097866, at *2 (S.D.N.Y. Sept. 19, 2001) ("Officer Bradbury did not arrive until well after the initial arrest had taken place . . . . Because Officer Bradbury was not involved in plaintiff's arrest (under plaintiff's scenario), plaintiff may not assert a false arrest claim against Officer Bradbury."); *Dallas v. Goldberg*, 2000 WL 1092986, at *6-7 (S.D.N.Y. Aug. 4, 2000) (dismissing false arrest claim against defendant officer who arrived on the scene after plaintiff was on the ground in handcuffs and whose sole responsibilities were securing evidence and searching a female arrestee for weapons)).) However, these cases determined whether the named defendants were personally involved in the plaintiff's arrest in order to determine whether they would be liable for a false arrest claim.

Defendants' argument is too narrow. Defendants focus on a specific type of Fourth Amendment unreasonable seizure claim, that of false arrest. The cases defendants cite are inapplicable because plaintiff does not allege a false arrest claim. The Amended Complaint alleges a violation of plaintiff's rights as guaranteed by the Fourth Amendment; this includes unreasonable seizures that do not amount to an arrest. *See Delgado*, 466 U.S. at 215 ("the protection against unreasonable seizures also extends to seizures that involve only a brief detention short of traditional arrest") (internal quotation marks and citation omitted). Defendants have not cited, nor are we aware of, any case law that would support the argument that if defendants did not put plaintiff in the room to detain her but rather participated in interrogating her after she was already detained in that room, they are not liable for an unreasonable seizure claim. Even considering the cases defendants cite, our determination would be the same because we conclude that plaintiff has sufficiently alleged defendants personal involvement in her seizure. Plaintiff has sufficiently alleged a plausible claim that her detention and interrogation at the police station with DiGiacomo and Lucas and her detention

7

and interrogation with Lucas at Eggenhauser's office were without probable cause and under circumstances in which the officers' conduct would have communicated to a reasonable person that she was not free to terminate the encounter. Plaintiff alleges that she was detained and interrogated without probable cause after she protested that she wanted to leave and did not want to be involved, and that the officers interrogated and threatened her and made false statements to coerce her to retaliate against Tancredi. Therefore plaintiff's claims against DiGiacomo and Lucas survive this motion to dismiss.

**III.     Monell Claim**

Section 1983 imposes liability on a government that, under color of some official policy, "causes" an employee to violate a person's constitutional rights. *Monell v. Dep't of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 692 (1978). A municipality may be liable for a constitutional violation inflicted by its employees or agents when the injury is a result of the execution of a municipal policy or custom. *Id.* at 694. To establish the existence of a municipal policy or custom, the plaintiff must allege: (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees. *See Prowisor v. Bon-Ton, Inc.*, 426 F. Supp. 2d 165, 174 (S.D.N.Y. 2006) (Conner, J.). Plaintiff attempts to establish municipal policy by alleging that defendants Lucas and DiGiacomo were acting

at the direction of Marraccini, who, she alleges, had policymaking authority. (Am. Complt. ¶¶ 4, 9.) She also attempts to establish municipal policy by alleging that the Town Board, which has policymaking authority, had knowledge of and condoned defendants' retaliatory conduct. (*Id*. ¶ 10.)

In *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), the Supreme Court held that a federal court may not apply a "heightened pleading standard" in civil rights cases alleging municipal liability under section 1983. Courts in this district have analyzed *Monell* claims using the standard set forth in *Leatherman*. *See Javid v. Scott*, 913 F. Supp. 223, 230-31 (S.D.N.Y. 1996) (Conner, J.); *see also Cooper v. Metro. Transp. Auth.*, 2006 WL 1975936, at *3 (S.D.N.Y. July 14, 2006). Therefore, the pleading standard applicable in a motion to dismiss, outlined above, is the appropriate standard in analyzing plaintiff's claim against the Town. Applying *Leatherman*, we determine that plaintiff has given defendants fair notice of a custom or policy that would establish municipal liability under section 1983. *See Cortlandt v. Westchester County*, 2007 WL 3238674, at *9 (S.D.N.Y. Oct. 31, 2007) (the plaintiff's allegation that the County had or passively approved a policy permitting improper and grossly negligent use of mental hygiene laws to institutionalize elderly citizens coupled with the plaintiff's seizure and commission to the hospital gave fair notice of plaintiff's municipal policy claim).

For a municipality to be liable for its employee's constitutional violation, the challenged action must have been undertaken by an authorized "final policymaker." *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) ("only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability") (internal citation omitted). "[W]hether an official had final policymaking authority is a question of state law." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986); *see Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 109 (2d

9

Cir. 2006). The policymaking authority may be "granted directly by a legislative enactment or may be delegated by an official who possesses such authority." *Pembaur*, 475 U.S. at 483.

According to statute, the Town Board has authority to " make, adopt and enforce rules, orders and regulations for the government, discipline, administration and disposition of the police department and of the members thereof." N.Y. TOWN LAW § 154. Plaintiff alleges that Marraccini, who is the Police Captain, had final decision making authority with respect to the conduct of investigations "by reason of the Chief of Police's abdication of responsibilities." (Am. Complt. ¶ 4.) By alleging that the Chief of Police has final decision making authority with respect to investigations, plaintiff has carried her burden on this motion.

Defendants argue that lower level police supervisors, like Marraccini, are not policymakers, and the Amended Complaint does not contain any facts that could plausibly be construed to indicate that Marraccini was a policymaker. (Defs. Mem. Supp. Mot. Dismiss at 15-16.) But, if Marraccini is the "acting" Chief of Police, as plaintiff alleges, then it is plausible that he has final decision making authority with respect to the conduct of investigations, as plaintiff also alleges. Defendants cite case law determining that lower level police supervisors do not have final decision making authority. *See Allan v. City of New York*, 386 F. Supp. 2d 542, 546 (S.D.N.Y. 2005) (granting summary judgment to defendants as to municipal liability because plaintiff failed to establish that orders given by the Captain constituted City policy because the Captain was not a "policymaker" for purposes of municipal liability); *Raphael v. County of Nassau*, 387 F. Supp. 2d 127, 132 (E.D.N.Y. 2005) (dismissing municipal claim on summary judgment because the Sergeant may have been the ranking officer on the scene but his orders on the scene did not constitute official municipal policy because he was not a policymaker). *But see Jeffes v. Barnes*, 208 F.3d 49, 57-61 (2d Cir. 2000)

(considering facts on motion for summary judgment, determined that Sheriff was, as a matter of law, the County's final policymaking official with respect to the conduct of his staff members toward fellow officers who exercise their First Amendment rights). However, these cases were decided after consideration of the facts on summary judgment.

It is plausible that the Harrison Police Captain might have final decision making authority with respect to officer conduct during investigations. *See Johns v. Town of E. Hampton*, 942 F. Supp. 99, 106 (E.D.N.Y. 1996) (determining that the Complaint succeeded in stating a claim under 42 U.S.C. § 1983 against the Town on the basis of custom and policy as a result of alleged final decisions made by the Police Commissioner and the Police Chief). Defendants have not called to our attention any legal authority that would foreclose the possibility. Although it is ultimately plaintiff's burden to establish that Marraccini was the Police Captain in Harrison and, as a matter of law, had final decision making authority with respect to officer conduct during investigations and interrogations, plaintiff has alleged enough to survive this motion to dismiss. *See Kempkes v. Downey*, 2008 WL 852765, at * 8-9 (S.D.N.Y. Mar. 31, 2008) (denying motion to dismiss on municipal liability because the court could not conclude that the Bronxville Chief of Police was not a final policy maker).

Defendants also argue that plaintiff has not plead any facts that could plausibly indicate that the Town Board was aware of a retaliation policy and ignored it. (Defs. Mem. Supp. Mot. Dismiss at 18-19.) Defendants argue that, even if the Amended Complaint could be construed as pleading a theory that the Town Board had a *de facto* policy of retaliating against parties for filing lawsuits against the Town, plaintiff's injuries did not result from such a policy because she does not allege that the actions at issue were taken against her because of any lawsuit she filed. (*Id*. at 19.) As plaintiff has not alleged that the Town Board knew of or condoned a policy regarding officer conduct during

investigations and interrogations, she has not sufficiently alleged a plausible ground for holding the Town liable based on any Town Board policy. However, because we find that plaintiff has sufficiently alleged a plausible ground for holding the Town liable based on Marraccini's conduct, we can not dismiss plaintiff's claim against the Town.

## CONCLUSION

For all of the foregoing reasons, the defendants' motion to dismiss is denied.

SO ORDERED.

Dated: White Plains, New York
       June 9, 2008

*William C. Conner*
Sr. United States District Judge
